UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>CLARK AVERY SQUIRES,<br><br>    Defendant. | Case No. 19-20625<br>Honorable Laurie J. Michelson |

**ORDER ON DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA [25]**

Clark Avery Squires pleaded guilty to production of child pornography. His trial counsel now claims that he provided ineffective assistance by failing to file a motion to suppress the incriminating evidence seized from Squires' electronic devices. So he believes that Squires' guilty plea was not voluntary and that Squires should be able to withdraw it. The Government disagrees. And so does the Court. The motion to withdraw the guilty plea is DENIED.

**I.**

In October and November 2018, the National Center for Missing and Exploited Children (NCMEC) received cyber tips from Google that a user account associated with Clark Squires was in possession of 8 image files that depicted animated child sexually abusive material (CSAM). (ECF No. 1. PageID.3.) These images were apparently uploaded to the account in August 2018. (ECF No. 28, PageID.155.) NCMEC received another anonymous cyber tip on August 9, 2019, informing that Squires was communicating about his sexual attraction to his young nieces and three-year-old daughter on the social medial application Wickr. (ECF No. 28, PageID.154.)

Detective Sergeant David Vergison with the Michigan State Police reviewed the files provided by Google and confirmed that the images depicted animated adults and children engaged

in sexual activity. (ECF No. 1, PageID.3.) After some further investigation, MSP conducted surveillance on Squires' suspected residence in August 2019 and observed vehicles associated with Squires and signs of occupancy. (ECF No. 28, PageID.156.)

So Detective Sergeant Vergison prepared an affidavit in support of a state search warrant for Squires' residence and any computers, mobile electronic devices, or other electronic storage media found in the residence for any possible child sexually explicit or other pornographic material. (ECF No. 25-1, PageID.145, 148.) The affidavit explained that the Michigan State Police were "conducting an investigation of a violation of [Mich. Comp. Laws] 750.145c(4), Child Sexually Abusive Material." (*Id*. at PageID.145.) It described the Google cyber tips received in October and November 2018. (*Id*. at PageID.146.) Vergison stated that he reviewed the images from the tips and "confirmed them to contain suspected animated CSAM" as "[e]ach of the images contains an animated child engaged in sexual activity." (*Id*.)

The affidavit also explained the importance of computers and mobile electronic devices to traffic in, trade, and collect child pornography. (*Id*. at PageID.147.) Vergison averred that based on his own training and experience, and that of the other officers he was working with, "[i]ndividuals involved in the sexual exploitation of children through adult or child pornography rarely, if ever, dispose of their sexually explicit material." (*Id*.) Thus, concluded Vergison, "[b]ased upon the increased sense of security that computers and mobile electronic devices afford and the known desire of individuals involved in child pornography to retain the materials for long periods of time, there is probable cause to believe that digital images will be retained indefinitely." (*Id*.) The affidavit also described technical and forensic matters relevant to the search warrant, including the ability of a forensic examiner to recover deleted files even months or years later. (*Id*.) Finally, in seeking the right to search the entire residence, Vergison again stated that based upon his

training and experience, "individuals who utilize mobile electronic devices to access pornography and/or child sexually explicit material collect and maintain the images and/or videos." (*Id*. at PgeID.148.)

A search warrant was issued by a Genesee County magistrate judge on September 4, 2019. (*Id*. at PageID.149.) It was executed at Squires' residence the next day. (ECF No, 18, PageID.47.) Law enforcement officers seized Squires' cell phone which contained a micro SD card. (*Id*.) The micro SD card contained three videos of child pornography from September 4, 2019 and three images of child pornography from November 30, 2018, involving Squires and his three-year-old-daughter. (*Id*.) And the SD card contained an additional 86 images and 25 videos of child sexually abusive material or child pornography, which depicted other female children and an adult male engaged in sexual activity. (ECF No. 25, PageID.159.) During an interview with Detective Sergeant Vergison at the time of the search, Squires admitted to viewing, sending, and receiving child pornography. (ECF No. 1, PageID.4.)

Squires was initially charged in a criminal complaint on September 12, 2019 with production of child pornography. (ECF No. 1.) He was subsequently indicted on two counts of production of child pornography, two counts of production of child pornography by a parent, and one count of possession of child pornography. (ECF No. 10.) He pled guilty on February 12, 2020, pursuant to a Rule 11 plea agreement, to the one count of production of child pornography involving the September 2019 videos of his daughter. (ECF No. 18.) During the plea hearing, and as required by Federal Rule of Criminal Procedure 11, the Court ensured that Squires was mentally competent to enter a guilty plea, that he understood his rights, the plea agreement, the charges against him and the consequences of pleading guilty, that he was satisfied with the advice and services of his counsel, that the plea was free of any coercion or duress, and that he was pleading

guilty freely and voluntarily because he was guilty and it was his choice to plead guilty. (ECF No. 20.) The court accepted the guilty plea and took the Rule 11 plea agreement under advisement.

Squires' sentencing was originally scheduled for June 16, 2020. (ECF No. 19.) It was adjourned, by stipulation and order, to September 22, 2020, as a result of the ongoing coronavirus pandemic. (ECF No. 22.) But before the sentencing could take place, Squires filed this motion to withdraw his guilty plea on August 20, 2020. (ECF No. 25.) Why the change of heart? Squires' counsel uncovered a Sixth Circuit case that he believes invalidates the search warrant for lack of probable cause. (*Id.*) As a result, counsel further believes he provided ineffective assistance by failing to file a motion to suppress, which prejudiced Squires who would not have plead guilty had the evidence been suppressed. (*Id.*) This, says counsel, makes the plea involuntary. (*Id.*)

The Government filed a response opposing the motion (ECF No. 28) and Squires filed a reply (ECF No. 29). With this extensive briefing, a hearing is not necessary. *See* E.D. Mich. LR 7.1(f).

## II.

"A defendant does not have an absolute right to withdraw a guilty plea." *United States v. Ellis*, 470 F.3d 275, 281 (6th Cir. 2006) (citations omitted). A voluntarily entered guilty plea that has been accepted by the court may be withdrawn before a sentence is imposed if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d); *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007).

## III.

The Court will first address Squires' claim that counsel's ineffectiveness prevented the plea from being voluntary and then whether any other reasons support withdrawal of the plea.

4

**A.**

Squires acknowledges that "a guilty plea is a waiver of a defendant's Fourth Amendment claims." (ECF No. 25, PageID.138.) Indeed, the Sixth Circuit has not found a defendant's post-plea expression of the desire to pursue a motion to suppress itself sufficient to establish a fair and just reason for withdrawal. *United States v. Hughes*, 392 F. App'x 382, 386 (6th Cir. 2010) (citing *United States v. Haygood*, 549 F.3d 1049, 1053 (6th Cir. 2008)); *see also United States v. Sanders*, 125 F. App'x 685, 687 (6th Cir. 2005) (affirming the denial of a motion to withdraw a guilty plea entered 75 days earlier, but still before trial, where the defendant's only basis to withdraw his plea was that certain evidence should be suppressed). So Squires casts his claim as a Sixth Amendment violation. (ECF No. 25, PageID.138.)

The two-part test from *Strickland v. Washington*, 466 U.S. 668 (1984), applies to challenges to guilty pleas based on a Sixth Amendment claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Squires must show that his counsel's performance "was not within the range of competence demanded of attorneys in criminal cases" and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

**1.**

It is hard to quarrel with the premise that had Squires brought a successful motion to suppress the child-pornography videos and images on his electronic device he would likely not have pled guilty. But did defense counsel perform deficiently in failing to bring such a motion?

Squires thinks the answer lies in *United States v. Hodson*, 543 F.3d 286 (6th Cir. 2008). That case concerned a warrant issued to search for evidence of child pornography in the home of a suspected child molester. More specifically, during online chats with an undercover detective,

Hodson stated that he liked looking at his young sons naked, that he had had sex with his seven-year-old nephew, and that he wanted to perform oral sex on the presumptive twelve-year-old boy with whom he was chatting (actually the undercover detective). *Id.* at 287. Based primarily on these conversations, the detective obtained a warrant to search Hodson's home and to seize evidence of child pornography. *Id.* at 289.

The Sixth Circuit held that "it is beyond dispute that the warrant was defective for lack of probable cause" because "[the detective] established probable cause for one crime (child molestation) but designed and requested a search for evidence of an entirely different crime (child pornography)." *Hodson*. 543 F.3d at 292. The Court reasoned that the warrant was invalid because the affidavit contained "no information whatsoever with regard to Hodson's engaging in any aspect of child pornography, or any basis for believing that individuals who engage in child molestation are likely also to possess child pornography." *Id.* at 289; *see also id.* at 293–94.

Squires says his situation is analogous to Hodson's. He believes the search warrant affidavit in this case explains only the officer's experience and knowledge of the habits of people who possess *non-animated* child pornography and lacks any description of the habits of people who possess *animated* child pornography. (ECF No. 25, PageID.139-140.) According to Squires, "the difference between animated and non-animated child pornography is like the difference between child molestation and child pornography in the *Hodson* case." (*Id.* at PageID.140.) He adds, "The experiences and knowledge of the inclinations of people regarding non-animated child pornography articulated by the affiant in the Squires affidavit were irrelevant to establishing probable cause to search Squires' computers and cell phones 12 months after his accounts had received animated child pornography." (*Id.*) Thus, says Squires, "[w]ithout a shown nexus between animated and non-animated child pornography, it was not established that there would be evidence

6

of the crime of possession of animated or non-animated child pornography at the time of the search of Squires' digital devices." (*Id*. at PageID.141.)

It is true that under *Hodson*, law enforcement cannot execute a search for evidence of one crime (e.g., child pornography) based on probable cause that the defendant committed a different crime (e.g., child molestation). But that is not what occurred here.

Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Cope*, 312 F.3d 757, 775 (6th Cir. 2002) (internal quotation marks omitted). The state search warrant here involved a suspected "violation of MCL 750.145c(4), Child Sexually Abusive Material." (ECF No. 25-1, PageID.145.) Oversimplifying slightly, that section provides criminal penalties for "[a] person who knowingly possesses or knowingly seeks and accesses *any child sexually abusive material* if that person knows, has reason to know, or should reasonably be expected to know the child is a child . . . or that the depiction constituting the child sexually abusive material *appears to include a child* . . . ." Mich. Comp. Laws § 750.145c(4) (emphases added). By referring to "*any* depiction"—including those made by "electronic, mechanical, or other means" and including a "computer-generated image" or a "picture"—the Act's definition of "child sexually abusive material" includes non-animated as well as animated materials. Mich. Comp. Laws § 750.145c(1)(o) (emphasis added); *see also People v. Czarnik*, No. 338856, 2018 WL 3244143 (Mich. Ct. App. July 3, 2018) (holding that drawn depictions fall under the definition of CSAM). In addition, the term "appears to include a child" in § 750.145c(4) is defined with respect to depictions that were created both with or without the depiction of any part of an actual person. *See* Mich. Comp. Laws § 750.145c(1)(b)(ii).

Thus, as the Government correctly argues, "[t]he search warrant's references to child pornography, child pornographic material, and child sexually explicit material . . . cover both

7

animated and non-animated images of child pornography or CSAM under Michigan law." (ECF No. 28, PageID.166.) In other words, the search warrant established probable cause for the offense of possessing or accessing child sexually abusive material under § 750.145c(4) by indicating that an account associated with Squires obtained animated child sexually abusive material and by describing the typical habits of people who possess non-animated child sexually abusive material, because § 750.145c(4) covers both animated and non-animated materials. There is no *Hodson* problem.

## 2.

Squires' resists this conclusion by arguing that the warrant affidavit needed to establish that a person possessing animated child pornography behaves the same as a person possessing non-animated child pornography. (ECF No. 29, PageID.184–185.) He says that "[w]ithout such a statement it could not be concluded that Squires would have any type of child pornography on his digital devices almost a year after receiving animated child pornography." (ECF No. 29, PageID.184–185.) Essentially, Squires thinks that while it is fair to infer that possessors of non-animated child pornography hang onto the images or videos for a long period of time, that inference cannot necessarily be extended to possessors of animated child pornography. But this is more of a staleness argument than a nexus argument.

"[S]tale information cannot be used in a probable cause determination." *United States v. Frechette*, 583 F.3d 374, 377 (6th Cir. 2009). Whether information in an affidavit is stale depends, in part, on "the inherent nature of the crime." *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (citation omitted). Child pornography, says the Sixth Circuit, "is not a fleeting crime" and "has a potentially infinite life span because files 'can be easily duplicated and kept indefinitely even if they are sold or traded.'" *United States v. Elbe*, 774 F.3d 885, 890 (6th Cir. 2014).

Collectors of child pornography "value their sexually explicit materials highly, rarely if ever dispose of such material, and store it for long periods in a secure place, typically in their homes." *United States v. Hampton*, 504 F. App'x 402, 404 (6th Cir. 2012) (citing *United States v. Richardson*, 607 F.3d 357, 370 (4th Cir. 2010)). And child pornography can still be recovered on a computer's hard drive even after those files have been erased, hidden, or encrypted. *United States v. Terry*, 522 F.3d 645, 650 n.2 (6th Cir. 2008).

Nothing about this law suggests there is a difference between those who possess animated and non-animated child pornography. And the primary problem with Squires' motion is that he does not explain why collectors of child sexually abusive material might not value the animated materials as highly or are apt to dispose of them more quickly than non-animated child pornography. Thus, the Court has been given no reason to believe that computer-generated child pornography, like its non-animated counterpart, cannot be easily duplicated, kept indefinitely, or recovered on electronic devices even after deletion.

The warrant affidavit describes the habits of individuals who collect, are interested in, and are involved with child pornography, and "who utilize their computers and/or mobile electronic devices to access pornography and/or child sexually explicit material." (ECF. No. 25-1, PageID.147.) And again, the way in which Michigan law defines child sexually abusive material, these described habits would cover those who possess both animated and non-animated child pornography. So combined with the fact that Michigan State Police found images depicting an animated child engaging in sexual activity, the search warrant provided probable cause to search Squires' residence and electronic devices for evidence of child sexually abusive material under Michigan law.

9

**3.**

And even if there was no probable cause to believe Squires had violated § 750.145c(4), suppression would not be the proper remedy as the officers acted in good faith. They had no reason to suspect the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *United States v. Leon*, 468 U.S. 897, 923 (1984), and thus that the warrant was not "properly issued." *United States v. Kinison*, 710 F.3d 678, 685–86 (6th Cir. 2013). So the good-faith exception to the exclusionary rule would have, in all likelihood, made any motion to suppress unsuccessful. *Id*. And there is no reason for counsel to bring a motion with little chance of success.

Squires' thinks otherwise and again relies on *Hodson*. His reliance is again misplaced. There, the Sixth Circuit concluded that the good faith exception did not apply because the crime alleged, child molestation, bore little or no connection to the search request—computers for evidence of child pornography. *Hodson*, 543 F.3d at 288–89. Here, by contrast, there was significant connection between the crime being investigated, possession of child sexually abusive material, and a search of a residence that had received child sexually abusive material.

In sum, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). As for this Court, the task "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id*. at 238–39. Under this standard, this Court would have been hard pressed to invalidate the search warrant for Squires' residence. So Squires cannot show that his counsel's failure to file a motion to suppress based on *Hodson* was an "error[] so serious that counsel was not functioning as the 'counsel'

guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. And thus, there is no basis to find his guilty plea involuntary.

**B.**

Without an involuntary guilty plea, Squires cannot establish a "fair and just reason for requesting the withdrawal" of the plea. Fed. R. Crim. P. 11(d)(2)(B). In evaluating this standard, the Court typically evaluates the following factors: (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted. *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *superseded by guidelines amendment on other grounds*, U.S.S.G. § 3B1.1. "The factors are a general, non-exclusive list and no one factor is controlling." *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996).

The Court has already analyzed the reason for and circumstances underlying the failure to seek withdrawal earlier. Those did not weigh in Squires' favor. Nor do the other factors.

First, the time between the plea and the motion to withdraw is significant. Squires pleaded guilty on February 2, 2020 and moved to withdraw his plea over 200 days later, on August 20, 2020. This lengthy delay weighs against allowing withdrawal of the plea. *See Martin*, 668 F.3d 787, 795 (6th Cir. 2012) (collecting cases where the Sixth Circuit has "found shorter periods"—seventy-seven, sixty-seven, and thirty-six days—"to be excessive"); *United States v. Pluta*, 144

F.3d. 868, 973 (6th Cir. 1998) (citing cases in which the Sixth Circuit sustained denials of motions to withdraw guilty pleas on the basis of delays far shorter than six months).

Second, "When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006) (citation omitted). Here, Squires acknowledged the truth and accuracy of the factual basis of the offense set forth in his Rule 11 plea agreement and admitted that made him guilty of production of child pornography. (ECF No. 18.) That Squires believes he may have been able to suppress incriminating evidence is not the same as maintaining innocence of the charge. This is simply not the "vigorous and repeated protestations of innocence" that Sixth Circuit caselaw requires to support a motion to withdraw a guilty plea. *See United States v. Baez*, 87 F.3d 805, 809 (6th Cir. 1996).

Third, the colloquy at the plea hearing established that the plea was knowing and voluntary and supported by an adequate factual basis. (ECF No. 20.) It complied with all provisions of Federal Rule of Criminal Procedure 11. (*Id.*)

Next, Squires has little prior experience with the criminal justice system. He was charged with domestic assault in 2007 and 2011, but both cases were dismissed. (Presentence Report, ¶¶ 51-52.) But he has earned his GED as well as an associate degree in computer networking. (PSR, ¶ 64.) He has held numerous jobs, including most recently as a verification assembly engineer. (PSR, ¶ 65.) The Court has little doubt that Squires fully understood the proceedings and the consequences of pleading guilty.

Lastly, because Squires failed to establish any fair and just reason to withdraw his guilty plea, the government need not establish prejudice. *Ellis*, 470 F.3d at 285–86; *Martin*, 668 F.3d at 797.

## IV.

Thus, Squires' motion to withdraw his guilty plea is DENIED.

IT IS SO ORDERED.

Dated: October 9, 2020

                                         s/Laurie J. Michelson
                                         LAURIE J. MICHELSON
                                         UNITED STATES DISTRICT JUDGE